## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

EDDIE S. HENDERSON, JR.,

      Plaintiffs,

v.

ZELIS HEALTHCARE, LLC,

      Defendant.

Civil Action No. _____

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiff Eddie S. Henderson, Jr. ("Plaintiff" or "Mr. Henderson") files this Complaint against Defendant Zelis Healthcare, LLC ("Defendant"). Plaintiff shows the Court as follows:

## INTRODUCTION

1.     Defendant subjected Mr. Henderson, who is African American, to differential treatment because of his race and national origin and terminated him after he opposed such discrimination, in violation of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"). Plaintiff asserts claims against Defendant under Section 1981 and Title VII for discriminatory termination based on race and national origin, and retaliatory termination for opposing race and national origin discrimination.

2.     Plaintiff seeks all available relief under Section 1981 and Title VII, including lost wages and benefits, compensatory damages, punitive damages, prejudgment and post-judgement interest, and attorneys' fees and costs.

## JURISDICTION AND VENUE

3.      This court has federal-question jurisdiction over Plaintiff's Section 1981 and Title VII claims, pursuant to 28 U.S.C. §§ 1331 and 1343.

4.      Pursuant to 28 U.S.C. § 1391(b), 42 U.S.C. § 2000e-5(f)(3) and Local Rule 3.1(B), venue is proper in this Court because the unlawful employment practices described herein were primarily committed within the Atlanta Division of the Northern District of Georgia.

## PARTIES

5.      Plaintiff is a citizen of the United States of America, where he was born, and a resident of the State of Georgia; he submits himself to the jurisdiction of this court.

6.      Plaintiff was employed by Defendant from November 23, 2020, through November 19, 2022. Plaintiff worked for Defendant as a Lead Application Architect.

7.      Defendant is a Delaware Foreign Limited Liability Company.

8.      Defendant regularly transacts business in the Atlanta Division of the Northern District of Georgia, including at its offices at 2 Concourse Parkway, Unit 300, Atlanta, Georgia 30028.

9.      Defendant is an "employer" within the definition of Title VII and is governed by Title VII.

10.     Defendant has employed fifteen (15) or more employees for the requisite duration under Title VII and is thereby covered under Title VII, 42 § 2000e(b).

11.     Plaintiff was an "employee" of Defendant within the meaning of Title VII.

## ADMINISTRATIVE EXHAUSTION

12. Plaintiff has satisfied all administrative prerequisites for bringing his Title VII claims in this Court.

13. On March 28, 2023, Plaintiff timely filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC").

14. On September 17, 2024, the EEOC issued Notice of Right to Sue regarding Plaintiff's Charge of Discrimination.

15. Plaintiff brings this suit within 90 days of his receipt of the Notice of Right to Sue.

## STATEMENT OF FACTS

16. Mr. Henderson was employed by Defendant from November 23, 2020, through November 19, 2022.

17. Mr. Henderson worked for Defendant as a Lead Application Architect.

18. Mr. Henderson is African-American.

19. Mr. Henderson was born in the United States of America.

20. From the start of his employment until November 2021, Mr. Henderson received no disciplinary actions.

21. To the contrary, he performed his job well and was often commended for his performance.

22. In November 2021, Sri Rajagopalan, Senior VP of Platform Engineering and Enterprise Architecture, became Mr. Henderson's supervisor.

23. Mr. Rajagopalan is East Indian.

24. From the start, Mr. Rajagopalan sought to minimize Mr. Henderson's role and accomplishments.

25. For example, during a team meeting in early February 2022, Mr. Rajagopalan included an image of an organizational chart that placed Mr. Henderson below every other member of the team, despite Mr. Henderson being the Lead Application Architect.

26. This was one of many attempts made by Mr. Rajagopalan to diminish Mr. Henderson's role within the company, while simultaneously lifting up Mr. Henderson's Indian colleagues.

27. Mr. Henderson immediately informed Mr. Rajagopalan that he was upset about this image, stating that, despite being part of the leadership team, he was being treated as if he was "the help."

28. Shortly after this conversation, on February 22, 2022, Mr. Rajagopalan offered to transfer Mr. Henderson to a new position under the supervision of a different manager.

29. In reality, this "transfer" was a demotion.

30. Had he accepted the "transfer," Mr. Henderson would have been placed in a lesser role in the company, with less opportunity for growth and promotion, less lucrative bonus opportunities, and with a different set of responsibilities.

31. As a Lead Application Architect, Mr. Henderson reported directly to the Senior VP, whereas the transfer would have placed him as a direct report to Dhiraj Sankala, Senior Director of Software Engineering for CSS, who holds a subordinate position on the organizational chart.

32. In fact, Mr. Sankala agreed with Mr. Henderson that the new position was below his role as Lead Application Architect, and that a transfer to this role would therefore constitute a demotion.

33. Additionally, this "transfer" would have forced Mr. Henderson to work with "Impact Analysis," or "IA."

34. Mr. Henderson has previously expressed to Mr. Rajagopalan that he had no desire to work with IA.

35. In effect, this was an entirely different position that would have upended Mr. Henderson's professional trajectory.

36. Lastly, changing roles would have materially impacted Mr. Henderson's compensation.

37. Mr. Henderson had a performance-based bonus structure due to his managerial position.

38. Had Mr. Henderson accepted the proposed transfer, he would have lost the ability to earn a managerial bonus based on his performance.

39. In this new role, Mr. Henderson's potential maximum earnings would have been substantially diminished.

40. Accordingly, Mr. Henderson advised Mr. Rajagopalan on February 24, 2024, that he would not accept a transfer.

41. Shortly thereafter, in March 2022, Mr. Henderson was placed on a performance improvement plan.

42. On April 14, 2022, Mr. Henderson received a "performance memo" from Mr. Rajagopalan detailing areas of improvement.

43. Mr. Henderson repeatedly requested examples of expectations from Mr. Rajagopalan but received no substantive response indicating performance expectations.

44. However, Mr. Henderson's Indian colleagues received frequent assistance and guidance from Mr. Rajagopalan, including detailed expectations regarding their deliverables.

45. Mr. Rajagopalan frequently shifted his expectations for Mr. Henderson, effectively "moving the goal posts" to unattainable levels.

46. On many occasions, Mr. Rajagopalan simply refused to convey exactly what the expectations were.

47. For instance, in an October 6, 2022, e-mail, Mr. Rajagopalan expressed concern with Mr. Henderson's work on a particular project. Mr. Henderson followed up within a couple hours and requested specific details about Mr. Rajagopalan's concerns and his expectations for the task. He received no response.

48. Things came to a head on October 10, 2022, when Mr. Henderson expressed his concerns about discriminatory treatment to Dawn Pataki, Senior VP of People & Culture.

49. Mr. Henderson described a pattern of discrimination, in which he repeatedly observed his Indian colleagues receive preferential treatment, including Defendant placing Indian employees into leadership positions vacated by non-Indian employees.

50.     Specifically, Mr. Henderson told Ms. Pataki:

I also find it very evident that I do not get the same assistance that my Indian counterparts get from Sri. Sri has provided templates and details for the asks to them, but he tells me I must figure it out. I find it strange that he makes it a point to continue to dismiss my existence in leadership meeting[s]…

I dismissed it a few times, but I realized that Sri does not view me on the same level as the Indian counterparts. All our interns have been Indian. Every vacated leadership position has been replaced by an Indian. So what I have been feeling for months is not just some false feeling. Then I look beyond the enterprise team and see that all promotions have been made to Indians, and others races have had lateral moves.

51.     Other non-Indian employees viewed a similar pattern of discrimination.

52.     For instance, Meisha Woods, former Manager of Analytics for Defendant observed a pattern of non-Indian employees being pushed out and replaced by Indian employees.

53.     Mr. Rajagopalan even told Ms. Woods that that, "he could replace [her] entire department with more willing developers from India."

54.     Just nine days after Mr. Henderson escalated his complaints of race and national origin discrimination, he received a "final" Performance Memorandum from Mr. Rajagopalan.

55.     On November 19, 2024, Defendant terminated Mr. Henderson's employment.

56.     Defendant terminated Mr. Henderson because of his race and/or national origin.

7

57.     In the alternative, Defendant retaliated against Mr. Henderson and terminated his employment because he engaged in the protected activity of opposing race and national origin discrimination.

58.     Defendant's actions in subjecting Mr. Henderson to discrimination and retaliation for his protected activity of opposing racial and national origin discrimination, were willful, wanton, and in reckless disregard for Plaintiff's federally protected rights, including his rights under Title VII and Section 1981.

59.     Due to Defendant's violations of federal law, Plaintiff has suffered lost wages and benefits, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

60.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

## COUNT I
## Discriminatory Termination Based on Race in Violation of Section 1981

61.     Plaintiff is African-American.

62.     Defendant discriminated against Plaintiff because of his race in terminating his employment.

63.     Defendant's actions in subjecting Plaintiff to racial discrimination and terminating him because of his race were willful, wanton, and in reckless disregard for Plaintiff's rights under Section 1981.

64.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

65.     Due to Defendant's violations of Section 1981, Plaintiff has suffered a loss of economic opportunity, lost wages, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

8

66.     Pursuant to Section 1981, Plaintiff seeks all damages to which he is entitled, including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief available under Section 1981.

## COUNT II
### Discriminatory Termination Based on Race and/or National Origin in Violation of Title VII

67.     Plaintiff is African-American, and was born in the United States of America.

68.     Defendant discriminated against Plaintiff because of his race and/or national origin in terminating his employment.

69.     Defendant's actions in terminating Plaintiff because of his race and/or national origin were willful, wanton, and in reckless disregard for Plaintiff's rights under Title VII.

70.     Defendant acted with malice and/or with reckless indifference to Plaintiff's Title VII rights.

71.     Because of Defendant's violations of Title VII, Plaintiff has suffered a loss of economic opportunity, lost wages, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

72.     Plaintiff seeks all available relief under Title VII, including declaratory relief, lost wages, compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## COUNT III
### Retaliatory Termination in Violation of Section 1981

73.     Plaintiff engaged in protected activity under Section 1981 when he, *inter alia*, opposed racial discrimination.

74.     Defendant retaliated against Plaintiff for engaging in a protected activity covered by Section 1981 by terminating his employment.

75.     Due to Defendant's violations of Section 1981, Plaintiff has suffered a loss of economic opportunity, lost wages, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

76.     Defendant's actions in terminating Plaintiff because of his opposition to racial discrimination were willful, wanton and in reckless disregard for his rights under Section 1981.

77.     Defendant acted with malice and/or with reckless indifference to Plaintiff's federally protected rights.

78.     Pursuant to Section 1981, Plaintiff seeks all damages to which he is entitled, including lost wages and benefits, compensatory damages, punitive damages, attorneys' fees and costs of litigation, and all other relief available under Section 1981.

## COUNT IV
### Retaliatory Termination in Violation of Title VII

79.     Plaintiff engaged in protected activity under Title VII when he, *inter alia*, opposed discrimination on the basis of race and/or national origin.

80.     Defendant retaliated against Plaintiff for engaging in protected activity covered by Title VII by terminating his employment.

10

81.    Defendant's actions in terminating Plaintiff because of his protected activity were willful, wanton, and in reckless disregard for Plaintiff's rights under Title VII.

82.    Defendant acted with malice or with reckless indifference to Plaintiff's Title VII rights.

83.    Because of Defendant's violations of Title VII, Plaintiff has suffered a loss of economic opportunity, lost wages, emotional distress, inconvenience, mental anguish, and loss of enjoyment of life.

84.    Plaintiff seeks all available relief under Title VII, including declaratory relief, lost wages, compensatory damages, punitive damages, interest, reasonable attorneys' fees and costs.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands a **TRIAL BY JURY** and the following relief:

a)    A declaratory judgement that the practices complained of herein are unlawful under Title VII and Section 1981;

b)    Full lost wages and benefits;

c)    Compensatory damages in an amount to be determined by the jury;

d)    Punitive damages in an amount to be determined by the jury;

e)    Attorney's fees, costs, and expenses;

f)    An award of prejudgment and post-judgement interest; and

g)    All other equitable and other further relief as this court deems just and proper.

*[signatures to follow]*

11

Respectfully submitted, this 6th day of December, 2024.

> _/s/ Zachary Panter_
> Zachary Panter
> Georgia Bar No. 822012
> James Radford
> Georgia Bar No. 108007
> RADFORD SCOTT LLP
> 125 Clairemont Ave., Suite 380
> Decatur, Georgia 30030
> Telephone: 678.780.4880
> zpanter@radfordscott.com
> jradford@radfordscott.com